IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 30 2019

David J. Bradley, Clerk of Court

Matthew James Leachman,
        Plaintiff

                v.

Harris County, Texas; Dr.
Marcus Guice; Dr. David Smith;
and Dr. Alan Harper,
        Defendants

§
§
§
§
§
§
§
§
§
§
§

No. 4:18-cv-00457

## PLAINTIFF'S FIRST AMENDED

## COMPLAINT

I, Matthew James Leachman, pro se plaintiff in this case, come before the Court with my first amended complaint. I amend my original claim "as a matter of course" within the allowed time. FED. R. CIV. P. 15(a). This amended pleading supersedes and replaces my previous pleading. King v. Dogan, 31 F. 3d 344, 346 (5th Cir. 1994)

# JURISDICTION

1. The Court has jurisdiction over my claim pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1983 (civil-rights violations).

2. Venue is proper in the Houston Division of the Southern District of Texas because the events leading to the claim occurred in Harris County, Texas, and one defendant is the municipality of Harris County, Texas. See 28 U.S.C. § 1391 (b).

# PRIOR LITIGATION

3. While not required under the pleading rules, see Fed. R. Civ. P. 8(a), the following statement will assist the Court in its screening duties under 28 U.S.C. § 1915A (b)(1) : I have never brought any other suit in any court involving the events in this complaint, nor have I brought any other suit in any other court against the individual defendants. A prior suit against then-Sheriff Tommy Thomas might be regarded as one involving the municipality of Harris County, but it involved much different facts and sought no monetary relief, as described below.

4. No federal court may require an inmate to identify suits against defendants, or involving claims, irrelevant to the pending claim. See Jones v. Bock, 549 U.S. 199, 212-13 (2007) (holding

that "screening" under 28 U.S.C. § 1915A does not permit judges to impose special pleading rules). In the spirit of cooperation, however, I advise the Court that I have filed the following civil-rights suits attacking conditions of confinement:

- In 1997, I filed No. H-97-cv-1722, Leachman v. Thomas, challenging the correspondence rules at the jail, seeking only prospective relief, and naming Thomas in his official capacity as Sheriff. Thomas ultimately obtained a summary judgment in his favor, which was upheld 2-1 on appeal.

- In March 2004, I filed No. 160,142-B, Leachman v. Stephens, in the 78th District Court of Wichita County, Texas, challenging certain TDCJ correspondence rules and actions by mailroom officials. The defendants ultimately obtained summary judgment. The case is reported by Westlaw at 2016 WL 6648747 (Tex. App.— Ft. Worth Nov. 10, 2016, pet. den.).

- In May 2012, I filed No. 176,990-C, Leachman v. Loomis, in the 89th District Court of Wichita County, Texas, challenging the failure of officials to comply with medical orders related to dietary restrictions. As far as I have been able to determine, the Attorney General's Office filed a motion to dismiss falsely alleging that I did not advise the court of my new address, and the judge — notwithstanding a pending recusal motion depriving him of authority to act — granted it immediately, without even checking the file (which contained my change-

of-address advisory). With paperwork and evidence among the property TDCJ destroyed after my bench warrant, appealing that improper dismissal — and then being forced to amend the claim to address the destroyed evidence — and then trying to litigate from a county jail all the way across the State — was not worth the potential return on investment, given my need to focus on matters related to my pro se defense in Harris County.

No other suits attacked the conditions of my confinement. I have never had a case dismissed by any court on grounds of frivolousness, maliciousness, or failure to state a claim.

5. Note that the majority of litigation I have conducted pro se, beginning with my pro se appeal — which, by coincidence, was conducted by the same judge assigned to this matter, see Leachman v. State, No. 01-98-1255-CR, 2006 WL 2381441 (Tex. App.— Houston [1st Dist.] Aug. 17, 2006, pet. ref'd) (opinion by George C. Hanks, Jr., J.) — has been criminal or quasi-criminal in nature. That litigation, all related to charges from 1996, is manifold and procedurally complex, not to mention ongoing. The "case history" graphic on Westlaw has grown to resemble a spiderweb. In all of that litigation, I have never been sanctioned, reprimanded, warned, or criticized for any misconduct or rule violations by any court.

## PARTIES

6.   I am an inmate currently confined in the Harris County Jail, 1200 Baker Street, Houston, Texas 77002. My jail identification number (SPN) is 01525039. I have been continuously incarcerated since March 13, 1996. I have been known by my full name, the shortened version "Matt Leachman," the alias "Hugh Perry Hootman," and the shortened alias "Perry Hootman." I have been assigned the TDCJ-CID # 903617 and the SID 5821583. From March 1996 until my federal acquittal in February 1997, I was in the custody of the U.S. Marshals Service, and I believe I was assigned identification numbers by them and by each contract facility they used, but at this late date, I do not remember them.

7.   Defendant #1 is Harris County, Texas, in its capacity as a municipality, at the County Judge's Office, 1001 Preston, Suite 911, Houston, Texas 77002.

8.   Defendant #2 is Dr. Marcus Guice, in his personal capacity, Medical Director, Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002.

9.   Defendant #3 is Dr. David Smith, in his personal capacity, Jail Dentist, Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002.

10.   Defendant #4 is Dr. Alan Harper, in his personal capacity, Jail Dentist, Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002.

## GRIEVANCES

11.   No federal court may require the inmate to "prove" exhaustion at the time it screens a civil-rights complaint. See Bock, 549 U.S. at 204-05 (striking down Sixth Circuit rule requiring inmates to attach grievance forms on pain of dismissal at screening). In the facts I set forth below, I establish that I followed the grievance procedures at the Harris County Jail (the "Jail") — even though inmates need not plead exhaustion. Id. at 211-12.

12.   Furthermore, I advise the Court that copies I attached in the Appendix to my original complaint were my only copies, and I note that if the defendants attempt a frivolous affirmative defense based on nonexhaustion, the Jail — an arm of Defendant Harris County — has possession of originals and can produce them at its convenience. Cf. Fed. R. Evid. 1002 ("Requirement of Original").

## FACTS GIVING RISE TO MY CLAIMS

13.   From 2000 - 2015, during my incarceration in the TDCS-CID, I obtained regular dental care, including prophylaxis (cleanings and

fluoride treatments), fillings as necessary, and one medically necessary extraction. My TDCJ dental record will document my efforts to take good care of my teeth. When I was bench-warranted to the Jail in 2015, I was waiting for scheduled treatment at my unit of assignment, which I mentioned to the medical-intake assessor during the "booking" process. She examined my teeth visually, told me it "look[ed] good," with no swelling, and advised me that the Jail's dental department was "pretty much limited to emergency care."

14.   About a year later — September 19, 2016 — a piece of a back molar broke off as I was chewing. Judging this an emergency, I submitted a medical-request form to dental via the medical dropbox in my cellblock. It took 37 days for dental to call me in for evaluation. On the evaluation date — October 26, 2016 — a dentist who identified himself as Dr. Harper (Defendant #4) examined X-rays taken that day and visually examined, with light and tools, all of my teeth. He told me that I had a "stage three" cavity in the broken molar and two developing cavities in other teeth. Dr. Harper explained in vivid detail and with visual aids the portion of "mechanical load" the broken molar took in chewing and told me a filling would save the tooth, which was highly recommended. But, he said, to obtain a filling, I would need to have my family arrange for an outside dentist to come to the Jail — with personal equipment and staff — to perform the work. Dr. Harper said the Jail had an extraction-only policy and that he was not allowed to do fillings. To save the tooth, he said, I could only arrange for an outside dentist or wait until I left the Jail; my only options on October 26, 2016, were to submit to, or refuse, extraction.

First Amended Complaint                              p. 7 of 20

Based on his emphatic recommendation that I do everything in my power to save the tooth, and his assurance that we could extract it later if my efforts failed and the pain grew unendurable, I refused extraction on that date.

15.    On October 28, 2016, I filled out a grievance describing my dental exam two days earlier, objecting to the extraction-only policy, and requesting care to save my tooth. On November 15, 2016, I received a response from the Grievance Board advising me that my grievance was deemed non-grievable on November 10, 2016. At that time, the In-mate Handbook contained no further review mechanism once a grievance was deemed to state a non-grievable complaint. (This remains true in the current Handbook, revised August 2017.)

16.    Around three weeks later, I was called back to dental for an annual assessment. Dr. Harper examined my teeth again, leading to a conversation substantially identical to the one on October 26th, inclu-ding the visual aids explaining the importance of the molar. At the annual assessment, Dr. Harper confirmed that a standard filling would save the tooth.

17.    Throughout December, I tried to locate a dentist willing to work pro bono or to accept a long-term payment plan, but I had no success. I also verified that no one in my family — most of whom live in Arkansas, and none of whom live in or near Houston — was in a financial or logistical position to help. Low-level discomfort from my broken molar was constant throughout this time, and I had to take special care when eating because any pressure on the tooth,

such as inadvertent chewing, caused sharp pain.

18. In January 2017, I began to experience episodes of more intense, throbbing pain, which I reported to the sick-call nurse on January 12, 2017. He called me to the triage exam room, examined my mouth, and said he would schedule a dental appointment. He apologized about the pain but said that dental would not set a priority appointment unless there was swelling or fever. During the 41 days thereafter, the episodes of intense, throbbing pain both continued and worsened. Sometimes the pain woke me up and made sleep impossible; twice, episodes of lasting pain were preceded by a sudden bolt of agony strong enough to buckle my knees and bring tears to my eyes. I treated these episodes of pain with OTC ibuprofen from commissary and Tylenol from the sick-call nurse.

19. I finally saw Dr. Harper again on February 22, 2017. He re-emphasized the importance of the molar, which he identified as #19, and asked whether I had any prospect of retaining a private dentist or leaving the Jail soon. When I said no and described the pain, he agreed that extraction had become necessary. The procedure proved difficult and included a broken root that had to be cut out; my recovery was slow and significantly more painful than in prior extractions.

20. I filed a grievance five days after the extraction — February 27, 2017, — complaining that the extraction-only policy had now cost me one tooth and that other teeth were in danger. LVN Lenning, the grievance liaison, discussed my grievance with me on March 14, 2017, and confirmed

that dental used an "extraction-only" policy; although she expressed sympathy about inmates' inability to get fillings, she claimed nothing could be done about it and said she would rule my grievance "resolved." I filed an appeal of her findings, which led to a meeting between me and Lieutenant Buntyn on May 16, 2017. He informed me that Captain Taylor, after consulting with medical administration, ruled my appeal "unfounded" because the Jail's written policy called for providing fillings to inmates. When I protested that LVN Lenning had admitted, during the grievance investigation, to the extraction-only policy that prohibited fillings, Lt. Buntyn said that did not matter because Capt. Taylor looked only at the official policy.

21.    I did not know it at the time, but Capt. Taylor was, and is, the Sheriff's designee for all grievance-related matters, the Jail's liaison with the Commission on Jail Standards, and the final authority for grievance appeals. See TEX. ADMIN. CODE § 283.3 (7) (requiring a level of appeal beyond the grievance board). Based on a belief formed from Lt. Buntyn's characterization of Capt. Taylor's communications with medical administration, I assert as fact that Capt. Taylor discussed my grievance with the Jail's medical director, Dr. Guice (Defendant #2).

22.    Furthermore, based on a belief formed by both listening to LVN Lenning's immediate acknowledgment of the extraction-only policy and reading the dates incorporated in Baughman v. Garcia, 254 F. Supp. 3d 848 (S.D. Tex 2017) — in which the County Attorney appeared on behalf of Harris County and in which Dr. Guice was deposed — I assert as fact that by May 16, 2017, Capt. Taylor, Dr. Guice, and the policymakers of Harris County all knew that dental operated under

an actual practice and policy calling for extractions only, notwithstanding a written policy calling for filling cavities.

23. On January 5, 2018, a dentist who identified himself as Dr. Smith (Defendant #3) performed my second annual assessment. He said my teeth looked "fairly good" but that I needed three fillings. I asked if he would do the fillings; he responded, "We don't really do that." He said the Jail's role is to identify problems that the inmate can resolve after leaving the Jail. His dental assistant chimed in, "We don't even have amalgam." Dr. Smith then said, "Right. We just don't have the equipment." Within a week of that exam, two of the teeth he probed and identified as having decay lost pieces from chipping away. At that point, with the Jail still continuing to deny standard fillings despite the ruling in Baughman, I decided that my only option was to file this action.

24. As 2018 progressed, I took every action I could to minimize tooth decay, including brushing and flossing after each meal. Frequently, the broken areas would send twinges of pain; sometimes, there would be spikes of sharper, more intense pain. I endured the discomfort and treated episodes of worse pain with OTC ibuprofen or Tylenol from the sick-call nurse.

25. On October 10, 2018 — about two weeks short of the third an-niversary of my booking-in date — I was called in to dental for my annual assessment. A dental assistant whom both inmates and dentists call "Ms. Linda" said that it had been a mistake to call me in, because my backlogged prior assessment in January 2018 meant that

I should wait until January 2019. Then she said, "Unless you need treatment today?" I said, "I still have three cavities that need fillings...," and she nodded sympathetically. After a pause, I said, "You're still not doing fillings?" She said, "No. Sorry."

26.   On January 16, 2019, I experienced a lengthy episode of pain that prompted me to ask the sick-call nurse — Mr. Madika (spelling phonetic) — if I could get extra-strength Tylenol. Mr. Madika talked to me about the level and frequency of pain, then asked if I wanted a dental appointment. I told him that my annual assessment should be occurring any day, and he said he would follow up on it.

27.   On January 28, 2019, I was called in to dental and discovered that Mr. Madika had requested an exam. After consulting with Ms. Linda, I signed a formal refusal of that exam in favor of the annual assessment, which would be more thorough. A dentist who identified himself as Dr. Samano conducted the exam. He reviewed the X-rays taken that day and examined my teeth, asked me about the pain, and launched into the now-familiar explanation of the Jail's extraction-only policy and my option to hire a private dentist.

28.   When I inferred from his tone and his body language that he was wrapping up the exam, I said substantially as follows: "Look, I'm involved in a lawsuit over this right now because I've been here three years, I'm stuck here for the foreseeable future, and the Jail won't do fillings even though Judge Atlas ruled they're required. All I'm trying to do is hang on until I can get an order for fillings. So, what I really need from you

First Amended Complaint                                        p. 12 of 20

today, please, is to compare last year's X-rays to today's, and let me know how much worse the cavities are. I'm doing everything I can to fight them. I mean, I don't even eat a cracker without brushing right away."

29.   Possibly as a result of the word "lawsuit" or of my emotional plea, Dr. Samano's attitude changed remarkably. He compared my X-rays and said that I must have done a good job because there was only "slow" progress of decay, and then he became the first jail dentist to propose a treatment plan: a fluoride treatment that day, a prescription for Peridex oral rinse to combat further decay, and a referral to Harris Health for fillings. Dr. Samano also told me, for the first time, that the jail could do temporary fillings if necessary, and that they could hold for quite a while with care on my part, preserving my teeth until I left the jail. Finally, he told me that the tooth breakage I'd experienced was due to nighttime teeth-clenching and grinding displacing old fillings, which could be solved with a simple night guard. He told me that dental would accept an OTC night guard mailed in by a family member or friend.

30.   It took me about three weeks to find the exact procedure for mailing in the night guard, but after I spoke to Mailroom Supervisor Shaun Ward, Ms. Linda called me back in to dental and instructed me to have the package sent directly to the dental department, with my name and number appearing only inside the package. Armed with the information, my friend sent in a nightguard, and I received it on March 1, 2019.

31.   Over the following months, Dr. Samano placed two temporary fillings: one on March 19, 2019, and another on May 21, 2019. Between those appointments, I experienced a significant episode of long-lasting pain in mid-April, prompting me to ask the sick-call nurse to verify that I had a pending appointment with Dr. Samano; he said that I did not. In response to my interaction with the nurse, Dr. Harper conducted a dental triage on my housing floor and said that my follow-up with Dr. Samano had apparently gotten "lost"; he prescribed a seven-day round of amoxy-cillin and naproxen to treat the flare-up of pain. Dr. Harper's triage occurred on April 30, 2019.

32.   On June 13, 2019, deputies transported me to one of Harris Health's dental clinics. After X-rays and an exam by Dr. Marty Powell, however, the clinic staff said that I was at an urgent-care center, that no fillings occurred at that location, and that they were unsure why the Jail had sent me there. I filed a grievance two days later, complaining that the Jail had sent me to the wrong place for fillings and requesting a fix for the problem.

33.   LVN Lenning spoke with me on July 9, 2019, and delivered the familiar spiel about the Jail's extraction-only policy; she said the Jail would not send me to another Harris Health facility, despite Dr. Samano's order, and that I would not receive fillings. I filed an appeal on July 16, 2019, which was denied as "unfounded" by the Grievance Board on August 28, 2019.

34.   Meanwhile, on August 14, 2019, Dr. Samano completed my temporary fillings and apologized for the Harris-Health debacle. He said that he'd done his best, but matters were now out of his hands. I told him that I understood, that I was awaiting a ruling from the Fifth Circuit, and that I would just have to hope for a result that would save my teeth.

35.   On September 5, 2019 — notwithstanding the denial of my appeal the prior week by the Grievance Board and without further action on my part — Lt. Buntyn came to my cell door to tell me that Capt. Taylor had my appeal and wanted me to know he was working on a response.

36.   The next morning, I was called in to dental, where I received a comprehensive battery of X-rays, followed by a thorough exam from Dr. Harper. He told me that the Jail had decided to find a private-contract dentist to fill my cavities, and he said he'd try to set it up as quickly as possible because the X-rays showed that Dr. Samano missed some decay areas that were now under the temporary fillings. Later that afternoon, on his way out of the building, he said that his supervisor had approved ordering the necessary supplies to do the fillings here, if I was okay with him doing it. I assured him that I was. He said that he would schedule an appointment for cleaning while we waited for supplies to come in.

37.   On September 21, 2016, Dr. Harper combined a complete cleaning and descaling with the first fillings, in two teeth at the lower left quadrant of my mouth. During the procedure, he commented several times — as he had on each prior occasion that he examined my teeth —

that my oral hygiene was excellent. On this occasion he added that except for the grinding surfaces, my teeth looked about 25 years younger than their chronological age.

38.    On October 12, 2019, Dr. Harper completed the fillings, working on both the upper and lower right quadrants of my mouth. He expressed grave concern, however, about my top molar, based on the depth of decay and bleeding during the procedure, and said he would monitor it closely. We also revisited reviewed X-rays of all the fillings, and he was concerned about a possible gap in the bonding area of two areas — one from that day and one from the fillings he'd done three weeks earlier. When he checked on me two days later, he said that upon further review, he thought the apparent gap might have just been the bonding agent.

39.    On October 15-16, 2019, I experienced severe pain in the upper right quadrant of my mouth — not localized to a single tooth, but radiating through the entire top half of my palate. Dr. Harper saw me on an emergency basis, prescribed painkillers, and adjusted the orientation of the molar to "take it out of occlusion." This made it possible for me to endure the pain until October 25, 2019; on that date, the Jail arranged for a specialist, Dr. Deeko Hassan (spelling phonetic), to perform a root canal and place a temporary cap. Dr. Hassan informed me that the severity and radiating nature of the pain was because the filling had cut into or pressed into the tooth's nerve.

40.    At the end of the root canal, Dr. Harper told me that he would find someone to place a permanent crown within a few weeks, but as

of the date I sign this pleading, that has not occurred.

41.   On December 7, 2019, one of the fillings Dr. Harper placed on September 21, 2019, came loose at the bottom — precisely the area he'd indicated on the X-ray. See ¶ 38, supra. The next day, it popped out entirely in a single piece. I sent in a medical request immediately, but have not yet seen dental; on December 13, 2019, Deputy Carmouche — who was working in my cellblock — said that he spoke to dental about my complaint and was told that they were waiting for Dr. Harper to return.

42.   I am aware that several key figures in this narrative — Drs. Samano and Harper, LVN Lenning, Sgt. Ward, and Lt. Buntyn — know of this lawsuit, even though it has not yet been served. In particular, I have also been working with Capt. Taylor, via Lt. Buntyn, on a religious-accomodations issue throughout this summer and fall, and I've expressed repeatedly to Lt. Buntyn that the drain on my attention and mental resources from this suit are already taking a toll on my criminal defense, such that I am desperate to avoid the necessity of an RLUIPA suit. Knowing this, and based on the totality of circumstances set forth above, I believe — and assert as fact — that the actions taken by jail personnel since September were a result of, and would not have occurred without, this lawsuit.

First Amended Complaint                                   p. 17 of 20

## CLAIMS

43.   I assert all of the following claims:

44.   Harris County, Texas, acting by and through its policymakers, knew that the Jail had adopted a custom and practice of "extractions only" for dental care: that is, rather than provide standard fillings for cavities when the Jail's own dentists knew that fillings were the appropriate treatment and even recommended that inmates retain private dentists to provide the fillings, the Jail refused treatment until the decay progressed far enough, and the pain grew severe enough, to make extraction necessary. The extraction-only policy exhibited deliberate indifference to a serious medical need, in violation of the 8th and 14th Amendments, by failing to treat the need adequately. The extraction-only policy harmed me by inflicting severe and unnecessary pain and by causing the loss of a tooth that could have been saved with adequate treatment of a standard filling.

45.   Dr. Marcus Guice supervised the dental department and had personal knowledge of the extraction-only policy described above but took no action to correct the policy after learning about it. His failure resulted in the severe, unnecessary pain, and in the loss of my salvageable tooth, described above.

46.   Dr. David Smith examined my teeth and diagnosed a medical need — standard fillings for cavities — but refused to treat the need, citing the extraction-only policy described in ¶ 44, supra. His failure

caused unnecessary pain and suffering in addition to physical damage, namely, the loss of tooth volume to decay between the date of his exam and the date the Jail finally agreed to fill my cavities.

47. Dr. Alan Harper examined my teeth and diagnosed a medical need — standard fillings for cavities — but refused to treat the need, citing the extraction-only policy described in ¶¶ 44, supra. His failure resulted in unnecessary pain and suffering, loss of tooth volume to decay, and the total loss of a tooth that he could have salvaged with adequate treatment.

## RELIEF REQUESTED

48. Based on the recent and welcome effort made by the Jail to fix my teeth, I no longer seek any prospective relief and have dropped my request for an injunction against the Sheriff. I now focus on the damage done before this suit moved the Jail to act.

49. I seek nominal damages against each defendant, jointly and severally.

50. I seek both actual and punitive damages against each defendant, jointly and severally: $10,000.00 from each individual defendant, and $100,000.00 from the municipality.

51. I seek recovery of my costs.

First Amended Complaint                                      p. 19 of 20

52. In the event any attorney appears on my behalf, I seek the award of attorney's fees.

I pray the Court grant relief.

Respectfully submitted,

Matthew James Leachman
SPN 01525039 Cell 2-J-1
Harris County Jail
1200 Baker Street
Houston, TX 77002

PLAINTIFF PRO SE

I certify that this document was delivered to Jail officials for mailing, in accordance with the procedures for legal indigent mail, on December 23, 2019.

I certify that the foregoing facts are true and correct under penalty of perjury. See 28 U.S.C. § 1746. Executed this 23d day of December, 2019.

Matthew Leachman

First Amended Complaint